CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 0 5 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ALLTECH, INC., <br>     Plaintiff, | Civil Action No. 5:08cv00045 |
| v. | **MEMORANDUM OPINION** |
| MYRIAD DEVELOPMENT, INC., <br>     Defendant | By: Samuel G. Wilson <br> United States District Judge |

Alltech, Inc. ("Alltech"), has a contract with the Federal Emergency Management Agency ("FEMA") to gather and make available inspection data, including photographs, of residential housing damaged in natural and other disasters. Alltech brought this action against Myriad Development, Inc. ("Myriad"), claiming that Myriad breached its subcontract with Alltech for the processing and storage of photographs and data that Alltech is obligated to provide FEMA. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332: Alltech is a Delaware corporation with its principal place of business in Virginia, Myriad is a Texas corporation with its principal place of business in that state, and there is more than $75,000 in controversy. About a month before Alltech filed this suit, Myriad filed an action against Alltech in the United States District Court for the Western District of Texas claiming that Alltech breached another contract with Myriad governing Alltech's use of Myriad's proprietary information system, which "provides data and photo capture capabilities . . ., data storage, and functionality related to the capture and archiving of inspection information." (Myriad Comp. ¶ 9.) Myriad maintains that Alltech's breach-of-contract claim in this court is, in reality, a compulsory counterclaim that Alltech was required to assert in the district court in Texas and has moved to dismiss or alternatively transfer to that court. At this juncture, after thoroughly examining the pleadings and relevant contracts,

the court cannot conclude that Alltech's claims are cleanly severable from the pending Texas litigation, and will be unable to make this determination without a trial in which all the agreements and intentions of the parties are fully developed. Since Alltech's claim intertwines with the pending litigation in Texas, the court finds that it is in the interest of justice to transfer this action to the United States District Court for the Western District of Texas. Having decided that transfer is appropriate, the court does not decide whether Alltech's breach-of-contract claim is a compulsory counterclaim that should have been asserted in the Texas litigation.

I.

Alltech assembles, trains, and deploys teams of inspectors, field incident managers, and computer personnel to provide expedited housing inspection services in presidentially-declared disaster areas. Under its agreement with FEMA (the "Prime Agreement"), Alltech performs on-site inspections of residences, takes photographs of these residences, and provides FEMA with these photographs within 24 hours. The Prime Agreement also requires Alltech to catalogue and store these photographs. Myriad is a technology corporation that provides products and services to facilitate the collection and management of data collected in field inspections. Myriad provides these products and services to casualty and property insurance companies, government agencies, and government contractors, like Alltech.

Alltech entered into three agreements with Myriad to facilitate its obligations under the Prime Agreement. The parties concluded the first agreement, called the APPRISE agreement, in June 2005. The agreement granted Alltech access to Myriad's proprietary information system, the APPRISE Property Inspection Management Module. Alltech received a "nontransferable, nonexclusive license to access APPRISE and the information included therein . . . solely for the

2

purpose of performing research and related work in the regular course of Alltech's business operations," but the agreement provided that Alltech received no ownership rights to the APPRISE system or its contents. The agreement also contained a merger clause, a choice of law clause providing for the application of Texas law, and an amendment. The amendment noted the purpose of the contracts: "[t]o support Alltech's performance under the Prime Contract, Myriad provides staffing as described in the Subcontract Agreement . . . and transactional services as described in the Apprise Agreement." The parties also concluded the second agreement, the AIMS agreement, in June 2005; this agreement governed Myriad's development and hosting of its AIMS proprietary information system and Alltech's limited use of AIMS.

The parties concluded the third agreement, the Subcontract, in May 2007. Under the subcontract, Myriad agreed to provide "professional and non-professional staff for the following positions: Call Center Assistant Manager, Call Center and Records Clerk, Application Developer, Warehouse Assistant Manager, Field Technician, Training Technical Support, Graphic Artist and Technical Help Line Technician." In addition, the Subcontract contained the following Rights in Data clause:

> Rights in Data shall be provided for in the Prime Contract, provided, however, that ALLTECH shall include all necessary restrictive rights legends and take other steps as permitted under the applicable FARS to ensure that SUBCONTRACTOR'S intellectual property rights are not compromised by this agreement.

The subcontract also contained a merger clause, a choice of law clause providing for the application of Virginia law, and a statement that the Subcontract "does not in any way affect, limit, or supercede other agreements between the parties regarding other services, including (without limitation) the Apprise Agreement . . . ." Finally, in an appendix, Alltech and Myriad

3

agreed to be bound by "attached FEMA Incorporated Clauses." That appendix essentially reproduced the Prime Agreement that incorporated by reference certain sections of the Federal Acquisition Regulations ("FAR"). One of the incorporated regulations, "Rights in Data-General" 48 C.F.R. § 52.227-14(h), potentially controls the outcome of Alltech's action against Myriad:

> Subcontracting. The Contractor shall obtain from its subcontractors all data and rights therein necessary to fulfill the Contractor's obligation to the Government under this contract. If a subcontractor refuses to accept terms affording the Government those rights, the Contractor shall promptly notify the Contracting Officer of the refusal and shall not proceed with the subcontract award without authorization in writing from the Contracting Officer.

The Subcontract was set to expire on September 30, 2007, but remained in effect until September 30, 2008 because FEMA awarded Alltech an "Option Year Task Order."

On April 2, 2008, Myriad brought a diversity suit against Alltech in the Western District of Texas alleging that Alltech breached the APPRISE and AIMS agreements because it was misusing and/or disclosing Myriad's intellectual property and confidential and proprietary information. Alltech filed an answer, and also filed a response to Myriad's amended complaint, but it asserted no counterclaims. The trial is tentatively scheduled for April 2009.

On May 19, 2008, Alltech filed its action for breach of contract in the Western District of Virginia. Alltech alleges that Myriad breached the Subcontract on March 28, 2008 by suspending Alltech's access to Myriad's system that stores inspection photographs and data. Since that date, Alltech alleges it has been unable to provide FEMA with the specific information contained in Myriad's system, and that the breach caused Alltech to expend considerable resources to find alternative ways to perform under the Prime Agreement. Myriad filed a motion to dismiss, or in the alternative, transfer venue. Following a hearing on Myriad's motions, the

4

court attempted to discern the separateness or severability of the claims in the two lawsuits by requesting that the parties respond to several questions regarding the Subcontract.[1]

## II.

In reviewing the pleadings, memoranda, relevant contracts, and the parties' responses to the court's additional inquiries, this court has attempted to discern whether Alltech's claim can be cleanly severed from the pending Texas litigation and expeditiously decided. Alltech argues that this case turns solely on the Subcontract, that the Subcontract incorporated by reference certain FAR regulations, and that those regulations entitle Alltech to recover the withheld data. Myriad counters that the Subcontract is not dispositive because in determining Alltech's data rights the court must also consider the APPRISE agreement. In reviewing the Subcontract, it appears that the Rights in Data clause and the appendix incorporate the Federal Acquisition Regulations, especially 48 C.F.R. § 52.227-14(h), and that if the Subcontract controlled Alltech's rights in the data, this matter would be severable from the Texas litigation and the court could decide that Alltech is entitled to the information stored on Myriad's server. But the Subcontract, read alone and in conjunction with the APPRISE agreement, appears to only govern "the provision of qualified staff and management personnel to support the inspection process;" it is the APPRISE agreement that grants Alltech a license to use Myriad's system, and the amendment

---

[1]The court asked the following questions: (1) Do I understand correctly from oral argument that the subcontract incorporates the Federal Acquisition Regulations? (2) If so, does the United States have an independent right of access to information and/or the completed product? (3) Does the United States have the right to access that information and/or completed product directly from its prime contractor? (4) Does the United States have the right to access that information and/or the completed product directly from the prime contractor without regard to disputes between the prime contractor and its subcontractors? (5) If there are and Federal Acquisition Regulations incorporated directly or by reference in the subcontract, do they also implicate dispute resolution procedures?

to that agreement expressly notes that the Subcontract concerns staffing arrangements while APPRISE concerns transactional services. To decide Alltech's rights to the withheld data the court cannot simply sever and analyze the Subcontract; it must potentially interpret the APPRISE agreement, examine the interplay between all three contracts, and ascertain the intention of the parties in drafting these agreements. Full development of this underlying factual context requires a trial on the merits, and given the current Texas litigation, to endeavor to do so would be a duplication of effort. The court therefore has determined that in the interests of justice Alltech's suit should be transferred to the Western District of Texas.

A district court may transfer an action "[f]or the convenience of the parties and witnesses, in the interest of justice, . . . to any other division where it might have been brought." 28 U.S.C. § 1404(a). The statute invests district courts with the discretion to decide transfer of venue motions based on an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citing Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). A variety of factors guide a district court's decision,[2] but this court will limit its analysis to the statutory factors and consider (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice. See Lycos, Inc. v. Tivo, Inc., 499 F. Supp. 2d 685 (E.D. Va. 2007). The movant has the burden of demonstrating the transfer of venue is proper. D'Addario v. Geller, 264 F. Supp. 2d 367, 391 (E.D. Va. 2003). The plaintiff's choice of forum is normally entitled to substantial weight, but other factors can outweigh this

---

[2]See 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3847 (3d ed. 2007) (summarizing the variety of factors courts apply in transfer of venue cases).

6

choice. GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999).[3]

Considering the first two factors, the convenience of the parties and witnesses, the court recognizes that deference is owed to Alltech's choice of forum, but its choice is not conclusive. Since Alltech is required to defend against Myriad's action in Texas, it cannot complain that transferring this action to Texas would inconvenience the parties. Instead, Alltech contends that its dispute over the Subcontract has substantial contacts with the Western District of Virginia because Myriad performed under the Subcontract by retaining employees in this forum, Alltech maintains its principal disaster relief services office here, and that any witnesses that are necessary to the action will probably be located in this forum. This may be true, but these contacts relate only to the Subcontract, and as stated earlier, to fully determine Alltech's rights to the withheld data, the court must determine the underlying factual context of the three agreements. Viewing the action through this broader lens therefore does not make this forum any more convenient than the Western District of Texas, where Alltech has transacted business with Myriad. Moreover, Alltech admitted during the hearing its contract dispute will require little discovery, and that discovery will be most likely directed at ascertaining the intent of those individuals who negotiated and drafted the agreements, rather than those employees performing under the Subcontract. Although it is not clear what specific witnesses will be necessary to the determination of this action, the court concludes that transferring this case to Texas will not necessarily inconvenience them.

Consideration of the third factor, the interests of justice, "encompasses public interest

---

[3]Before analyzing the factors, the court notes that venue would have been proper if Alltech sued Myriad in the Western District of Texas because Myriad is subject to personal jurisdiction there. See 28 U.S.C. § 1391(a), (c).

7

factors aimed at 'systematic integrity and fairness,'" which includes promoting judicial economy and avoiding inconsistent judgments. Samsung Elec. Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 721 (E.D. Va. 2005) (citing Stewart Org., Inc., 487 U.S. at 30). These two values weigh heavily in favor of transfer when related actions are pending in another forum because litigating the related matters together not only promotes efficient, economical, and expeditious pre-trial discovery but also because it avoids inconsistent results. U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 924, 937-38 (E.D. Va. 2005) (citing Berg v. First Am. Bankshares, Inc., 576 F. Supp. 1239, 1243 (S.D.N.Y. 1983)). Transfer further enhances judicial economy when a district court has already litigated a case with similar facts and issues, because that court will already be familiar with the facts of the case to be transferred. Id. at 938; see also Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 363 (W.D.N.C. 2003) ("While there is no guarantee that all of [the parties'] cases may be consolidated, it is nonetheless expedient to allow a court that is already familiar with [the parties'] essential arguments to adjudicate this case as well.").

Transferring this case to the Western District of Texas furthers the interests of justice. Litigating the intertwining actions in separate forums is an inefficient use of the parties' and the judiciary's resources. As the parties stated during the hearing, the Western District of Texas has already conducted discovery; its familiarity with the APPRISE agreement would certainly aid that court in deciding Alltech's action. Finally, though the two lawsuits are not identical, and therefore there is not necessarily a risk of inconsistent judgments, the suits overlap enough that this court risks reaching conclusions about the parties' intentions and the interplay of the several agreements that may be inconsistent with the Texas litigation's outcome. Accordingly, the court

8

grants Myriad's Motion to Transfer Venue.[4]

### III.

For the foregoing reasons, Myriad's Motion to Transfer Venue is **GRANTED**.

**ENTER**: This December 5th, 2008.

_____
UNITED STATES DISTRICT JUDGE

---

[4]Other interest of justice factors, such as the court's familiarity with the applicable law, docket conditions, access to important premises, the possibility of unfair trial, the ability to join other parties, and the potential for harassment, do not weigh against transferring venue. See U.S. Ship Mgmt., Inc., 357 F. Supp. 2d at 937. Alltech's argument that this court can more quickly resolve this action in this forum ignores that the pending Texas litigation is tentatively scheduled for trial in April 2009, and that Alltech itself conceded at the hearing that it would probably quickly file a motion for summary judgment after Myriad answered its complaint. Thus, transferring this case to Texas does not necessarily interfere with Alltech's litigation strategy. Also, Alltech's argument that this court is more familiar with Virginia law ignores the fact that to determine Alltech's rights under the Subcontract, governed by Virginia law, it must also determine its rights under the APPRISE agreement, which is governed by Texas law.

9